John D. Bennett, S.
In this accounting proceeding a hearing has been held as to the petitioner’s claim to be the sole distributee of this estate by reason of her allegation that she is the sole surviving first cousin of the decedent.
The proof adduced at the hearing consists entirely of testimony by three individuals: Bertha Nelly Bauer, the petitioner; Henry Krueger, a stepson of the decedent; and John Pasta, a former attorney for the petitioner who testified to certain efforts made by him to locate the decedent’s heirs and the information he was able to obtain.
The petitioner testified that her grandparents’ names were Heinrich and Bertha Steeneck, and that their only children were (resine, Katherine Ann and Henry Steeneck. She also testified that the decedent was the child of Gesine Steeneck by her marriage to Charles Layh, and that she was the daughter of Katherine Ann Steeneck who married a Henry Dohrmann. Two other children of this latter marriage, a brother and sister of the petitioner, are deceased. The petitioner further stated that Henry Steeneck, the third child of Pleinrich and Bertha Steeneck, had five children: Minnie Titus, John, Henry and Herman Steeneck, and Henrietta Campbell. She testified of knowing of the deaths of three of Henry Steeneck’s children, namely, Minnie, John and Henry, but of having no knowledge of the actual deaths of Henrietta and Herman. She however believes them to be dead. She also testified that the decedent had a half brother, a Richard Seedorf, who was the child of a prior marriage of the decedent’s mother, and who died prior to the decedent without having married. The petitioner also testified that while the decedent was married twice, first to an Alice Layh and then to a Pauline Krueger Layh, he had never had any children, and that both of his wives were deceased.
Henry Krueger, the decedent’s stepson and a child of Pauline Krueger Layh by a previous marriage, testified to having known the decedent for a period of 25 to 30 years and that in one discussion with him he related that he had no relative other than Mrs. Bauer. In answer to the question: “ Did he ever indicate whether or not he has an uncle or an aunt on his father’s side? ”, he answered: “He never stated that he had any relatives other than Mrs. Bauer. In fact, that’s the only one he ever visited. ” He also corroborated several of the facts testified to by the petitioner, namely, the death of the decedent’s second wife, the mother of the witness, and the decedent’s half brother’s death.
Mr. Pasta’s efforts at locating the heirs of the decedent consisted in part of placing two advertisements in the New York *94 Times, neither of which resulted in any response, and searching* through Kings County Surrogate’s Court records where he discovered files relating to the estate of Charles Layh who died February 28, 1895 survived by his wife Gesine Seedorf Layh and a .son, the decedent herein, who was then two years old. He testified that records there also indicate Gesine died in Brooklyn on November 11, 1908 survived by the decedent and his half brother, Bichard Seedorf, and that the sister of Gesine, Katherine Ann, also known as Annie Dohrmann, was appointed general guardian for the two children. No papers were found on file in that court relating to the estate of Henry Steeneck nor apparently of any of his five children. The petitioner’s recollection that Henrietta Campbell was married to a Frank Campbell who was employed in the Fire Department in Long Island City led to a search for Fire Department records of a Frank Campbell, without success. A search of the records of the Surrogates’ Courts of Queens and Nassau Counties and of various telephone directories also proved negative.
The guardian ad litem in his final report has reported that in his opinion the evidence has failed to prove conclusively or even substantially that Henrietta Campbell and Herman Steeneck are now dead or can be presumed to be dead. The petitioner in a memorandum has urged that the court determine that the two allegedly missing first cousins be presumed dead by reason of their absence for over seven years (see Decedent Estate Law, former § 80-a).
The court, however, is of the opinion that the inadequacies of the record relating to the proof of heirship go beyond merely the question of whether the deaths of Henrietta and Henry can be presumed by reason of their absence. Primary in this regard is the complete absence of any documentary evidence whatsoever. No birth, death or marriage certificates or the like were introduced to establish any of the critical facts, although presumably some of these records are available. The attorney conducting the search or investigation testified to a search of Surrogate’s records, the insertion of advertisements in the New York Times and a search through various telephone books. Such a limited investigation leaves much to be desired. Apparently no investigation of the exact area in which any of the children of Henry Steeneck resided was conducted, although the petitioner testified that Henrietta may have lived in the Williamsburgh section of Brooklyn around Devoc Street. In addition, there is no testimony that any office of vital statistics was consulted with regard to births, deaths and marriages; whether cemetery records, church records, banking, insurance, *95 utility, school, census, Army and Navy, voting, police, motor vehicle, naturalization or other possible business or employment records were searched for possible leads as to the identity of the distributees.
Without any documentary proof whatsoever, all that remains in the record is the testimony of the three witnesses. No attempt was made to bring the testimony of the petitioner specifically within the pedigree exception to the hearsay rule (see Richardson Evidence [9th ed.], §§ 215-224), and most of her testimony is self-serving in nature. The only clear-cut testimony of a pedigree nature is that of Mr. Krueger who testified the decedent stated he had no other relatives save the petitioner. However, even pedigree testimony has been found questionable by the courts (Matter of Leary, 48 Misc 2d 852). As stated in Fiscli on New York Evidence ([1959], § 981): “ Because of such factors as family pride, the impunity with which a witness can slant statements claimed to have been heard from a now unavailable declarant, the impermanence of memory, and the questionableness of the assumption that every member of the family, no matter how remotely related, knows the true facts of his family history, pedigree evidence not only may be overcome by other evidence (citing Chamberlain v. Chamberlain, 71 N. Y. 423) but is generally regarded with suspicion. ”
Moreover, the court cannot indulge in any presumption of death from the so-called absence of Herman. On the contrary, the petitioner testified that she had little or no contact whatever with him since apparently childhood. As Surrogate Win-gate stated in Matter of Katz (135 Misc. 861, 870-872): “ obviously, a failure to communicate is meaningless in the absence of a showing of habits of communication by the absentee with the persons in question * * * or of closeness and cordiality of relations which would make such communication probable * '* * under all the cases found, no presumption of death from seven years’ absence will be indulged unless the person seeking the adjudication demonstrates satisfactorily that he has conducted a thorough and exhaustive search for the missing person. * * * Not only should they be directed to the place from which the last information of the absentee came, but also to every other locality to which his known inclinations, habits and associations might reasonably be supposed to have led him. ”
The final serious. omission in the record is the complete failure to explore fully the possibility of distributees on the paternal side. Before any determination can be made as to heirship an *96 investigation must be conducted both as to paternal and maternal sides (Matter of Haaser, 187 Misc. 368). While the court appreciates that rights should not be held in abeyance indefinitely on account of the absence of a person or persons of whom no trace can be found, or because of the remote possibility of additional distributees, the present record is devoid of sufficient evidence upon which to make a determination as to heirship.
In the event the petitioner is able to present additional competent evidence at a continued hearing, a motion for such purpose should be made, or, in default thereof, the assets are directed to be paid to the Comptroller of the State of New York for the benefit of unknown distributees (SCPA 2222).