OPINION OF THE COURT
Barbara Howe, J.
Decedent Nora T. Gavin died on March 16, 2008. Her last will and testament, dated March 8, 2006, and codicil, dated May 21, 2007, were admitted to probate by this court on April 16, 2009, and letters testamentary were issued to the named executor and residuary beneficiary of the estate, Nora’s attorney, William N. Naples.[1] Nora’s purported parents, Anthony and Sarah Gavin, predeceased her, she was never married, and she had no issue. At the time of her death, her heirs were unknown, and a guardian ad litem was appointed by this court to represent those unknown heirs.
Subsequently, Marian A. Geisler was identified as a possible maternal first cousin, although the paternal side of the family remained unknown. Geisler filed a petition for advice and direc *234 tian in May 2009, seeking a determination that she is Nora’s only distributee.
At the direction of this court, a kinship hearing was held before the Chief Attorney of this court, designated by me to hear and report with respect to the issues which I must now decide. At the hearing, counsel for all parties consented to the appointment of the referee, waived the filing of a written referee report, and consented that I might determine the issues based on the testimony and documentary evidence adduced (see SCPA 506 [6] [c]).
The first day of the hearing took place on April 22, 2010, at which Geisler presented two witnesses. The hearing was then adjourned for further testimony. No further testimony was ever produced by Geisler, but on February 13, 2013, the hearing resumed solely so that certain documents could be placed into evidence. Proof was finally closed on March 22, 2013, with the submission by Geisler of a last document.[2]
A briefing schedule was then set. All parties have had the opportunity to set forth their positions, and the matter has been finally submitted.
I now find and decide as follows.
(A)
A claimant has the burden of proving kinship (see e.g. Matter of Flavin, 15 Misc 3d 1104[A], 2007 NY Slip Op 50479[U] [2007]; Matter of Morris, 277 App Div 211 [1950]), and she must establish that she is Nora’s closest surviving blood relative as defined in EPTL 4-1.1 (see Matter of Dinzey, NYLJ, June 9, 2003 at 33, col 4). This burden is met by a preponderance of evidence (Matter of Whelan, 93 AD2d 891 [1983]). For kinship to be established to the satisfaction of the court, the claimant must make an evidentiary showing (1) how she is related to decedent, and (2) that no other persons of the same or a nearer degree of relationship survived decedent. Upon proof that no heirs other than those before the court exist, the class of heirs may be “closed” (see e.g. Matter of Alao, NYLJ, Mar. 19, 2002 at 18, col 6).
“[I]n all cases involving pedigree and the distribution of intestate property, it is first necessary to establish the identity of the common ancestor and from that point to construct the *235 true family tree, to which all claimants must attach themselves to be successful” (Matter of Whalen, 146 Misc 176, 180 [1932]; see also Matter of Lelito, 20 Misc 3d 1120[A], 2008 NY Slip Op 51479[U] [2008]).
“When persons of the nearest degree of relationship establish [their] standing, those more remote are excluded (Matter of Henesey, 3 Misc 2d 660, 662 [1956], affd 3 AD2d 834 [1957]). One who seeks to establish an interest in a decedent’s estate as a collateral relative must show that all lines of descent which would precede his or her claim as a distributee are exhausted” (Matter of Dinzey).
The proof required in kinship proceedings has been well-established over the years (2 Harris, New York Estates: Probate, Administration and Litigation § 21:19 [5th ed]). Evidence of pedigree takes the form of oral testimony, preferably by a disinterested person such as a professional genealogist, with documentary evidence required to corroborate it (see Matter of Kuberka, 22 Misc 3d 1104[A], 2008 NY Slip Op 52599[U] [2008], citing 6 Warren’s Heaton, Surrogate’s Court Practice § 74:17 [2] [b] [iii] at 74-57 [7th ed]; Matter of Logue, NYLJ, June 19, 1998 at 30, col 3; Matter of Layh, 55 Misc 2d 92 [1967]; Matter of Pacosz, 22 Misc 3d 1105[A], 2008 NY Slip Op 52600[U] [2008]). “[Claimants who fail to offer evidence to exclude the possible existence of persons who would have an equal right to share in the estate, fail to establish their rights as distributees (Matter of Hasser, 187 Misc 368 [Sur Ct, Bronx County 1946])” (Matter of Darienzo, NYLJ, July 23, 2010 at 36, col 5).
(B)
I find, for the reasons which follow, that Geisler has failed to meet her burden of proof that she is a distributee of decedent and also that there are no other maternal or paternal heirs who have an equal or prior right to share in this estate.
(i)
Two witnesses testified at the kinship hearing, executor William Naples and Albert T. Garner, Jr., a possible maternal second cousin of Nora’s. I find their testimony to be substantially credible, and, based on their testimony, I find that Nora died without a spouse or issue.
However, as set forth in the guardian ad litem report of Roger Simon, Esq., the testimony of Naples offered “very little if *236 anything about [decedent’s] ancestry,” and Garner’s testimony “was of limited value.” Furthermore, Simon states (and I concur) that “the documentary evidence that was produced in this matter is very limited . . . there is a paucity of other documents evidencing the death of potential distributees, and certainly nothing that documents whether or not they had children, etc.” In fact no proof at all was presented at the hearing regarding the paternal side of decedent’s family.
According to her death certificate, Nora was born on October 26, 1917, in Lorain, Ohio, and her parents were stated to be Anthony F. Gavin and Sarah Darney.[3] Although Naples was listed as the informant on the death certificate, he testified that Nora actually gave that information to “the cremation person, prior to her death.”
Naples testified that he had been told that, in August of 1930, when he was three weeks old, his mother was in the waiting room of Lafayette General Hospital in Buffalo, New York, where she observed a young girl crying and sobbing. When his mother asked the girl what was wrong, she stated that her mother had just died. That little girl, Naples learned in later years, was decedent, Nora Gavin.
Naples’s testimony is corroborated by the death certificate of Sarah Gavin, which states that she died on August 23, 1930 at Lafayette General Hospital. It also states that Sarah was married to Anthony Gavin, who was the informant on the death certificate. Sarah’s death certificate lists her parents as James Garner and Mary Mohan, both of whom were born in Ireland.
Naples testified that he first remembered meeting Nora in 1937, when he was approximately seven years old, and that she lived one block away from his family. He would see Nora at least once a week during her lifetime, and he eventually became not only her friend but also her lawyer.
Naples said that, during her lifetime, “Nora always told me that she had no relatives on either her father’s side or her mother’s side.” However, in 1988, in the context of drafting a will for Nora, Naples asked her who her heirs were, and she “just said Alice O’Malley, my cousin.” Then, after Nora’s death, while going through her belongings, he discovered a bereavement card for Alice O’Malley from Lorain, Ohio, which listed decedent “Nora Gavin” as Alice’s “sister.”
*237 Unsworn papers have been submitted concerning an undated Ohio guardianship proceeding for Alice, which state that Alice had two siblings, John B. O’Malley and Nora Gavin. Nora is referred to as a “blood sister” of Alice, but the papers say that she was “legally adopted as an infant by Mr. and Mrs. Gavin.” During her lifetime, Naples had no knowledge of Nora’s adoption, nor did she ever speak of being adopted. At the time of his testimony in 2010, Naples was not aware of any search for adoption records relating to Nora.
The other witness at the kinship hearing was Garner, who is a nephew of claimant Geisler. Garner testified about Nora’s purported maternal family, and a family tree which was prepared by the estate was introduced into evidence at the hearing.
According to Garner’s testimony, his father, Albert T. Garner, Sr., who died on October 24, 1997, would be a first cousin of Nora’s. Although he had heard her name mentioned, Garner did not know Nora during her lifetime. The family tree lists Nora’s maternal grandparents as Mary Mohan Garner and James Garner, and it also lists their dates of death. Again, that family tree is not sworn to by anyone, Garner acknowledged that much of the information is second hand to him, and there is no documentary proof to establish the correctness of what is set out on the tree.
A Garner family tree lists Nora’s purported maternal grandparents, Mary and James, as having eight children, including Sarah Garner. One of Sarah’s siblings is Paul Garner, who is Geisler’s father. Although I find Garner to be a credible witness, there is next to nothing of evidentiary value to support what is alleged on the tree.
Garner clearly provided what information he could based on his own limited personal knowledge of the Garner family. Interestingly, though, he testified that the Garners did not have family gatherings and that the “[Garners] weren’t a real close family,” that “[t]hey were sort of to themselves people.”
(ii)
One of the most unfortunate results of the record before me is that it is impossible to determine what maternal or paternal line is appropriate for Nora.
The proof establishes that Nora was born in Lorain, Ohio, on October 26, 1917, to John T. O’Malley and Margaret M. O’Malley. It is then alleged that she was adopted by Anthony Gavin and his wife, Sarah (Garner) Gavin, of Buffalo, New York. *238 However, there is not a shred of proof to establish that that adoption ever actually occurred.
I take judicial notice, as I am permitted to do, of the entire record of this estate. Following the first day of testimony in this hearing, a petition was filed in 2012 by Geisler seeking to open the adoption records of this court. Geisler’s attorney stated at that time that “it is now necessary to conduct a review of the adoption records in and for the County of Erie, New York, to determine if Nora Theresa O’Malley was in fact adopted after her birth in 1917” (emphasis added).
A part of the petition to unseal was an affidavit from Naples. In pertinent part, Naples says:
“I believe that after her birth on October 26, 1917, she was adopted by relatives in Erie County, New York. Nora was born to Mr. & Mrs. John O’Malley and later adopted by John O’Malley’s stepbrother Anthony Gavin and his wife Sarah Gavin. Both were living in Buffalo, New York at the time of the adoption. It would have occurred between 1917 and 1925. Sarah Garner Gavin died in 1930 in Buffalo, New York.”
In response to that petition, the Chief Attorney of the court wrote to all counsel at my direction, as follows:
“[t]he Court has directed me to advise you that there are no adoption records for Nora T. Gavin in this court. You may wish to make application to Erie County Court or to Erie County Family Court to see whether any such adoption records exist in the files of either court.”
To date, nothing has been put forward by Geisler to establish that Nora was adopted by Anthony Gavin and his wife Sarah. The last document in evidence was an email from the legal deputy of the Erie County Clerk to Geisler’s attorney, in which she stated that in response to his request to search for a record of adoption of Nora O’Malley by Anthony and Sarah Gavin:
“We have now searched from 1880 to 1962 and have found no record. The only suggestion I might make is to check with the jurisdiction that she moved to with her adoptive parents. You might also contact Millie Castro at the City’s Office of Vital Statistics; you are welcome to use my name as the person referring you. She might not be able to supply you with a document but might be able to determine if her birth certificate was changed and where or *239 when. Let me know if that doesn’t work. I have another contact at the State, I think.”[4]
The fact that Nora always referred to her parents as Anthony and Sarah Gavin is of no legal moment. There is nothing to show that Nora ever knew that her biological parents were John and Margaret O’Malley, much less that she knew she may have been adopted by Anthony and Sarah Gavin.
For all the evidence shows in this record, Nora could simply have been taken after her birth by Anthony and Sarah Gavin to be raised by them as their daughter, with the consent and blessing of John and Margaret O’Malley (who, according to Naples, were related to the Gavins by the step-sibling relationship of Anthony and John), without the benefit of any legal adoption proceedings.
Thus, I cannot find that Nora’s paternal line stems from Anthony Gavin, or that her maternal line stems from Sarah (Garner) Gavin. On the proof before me, Nora’s maternal line could stem equally (if not more so) from Margaret O’Malley, and her paternal line from John O’Malley.
Accordingly, Geisler has not established that she is a maternal first cousin of Nora’s.
(iii)
In fairness to the parties, I point out that, even if it had been established — which it has not — that the paternal and maternal lines stem from Anthony and Sarah Gavin, the proof is still inadequate to determine who is entitled to inherit Nora’s estate.
Although, in this scenario, I could find that Geisler was a maternal first cousin of Nora’s, the proof is inadequate to find that she is the only maternal first cousin who survived Nora. Even more, there is no proof in this situation about the paternal side of the family.
(C)
Geisler argues that, because Nora died more than five years ago, she is entitled to a relaxed burden of proof under SCPA 2225 (b).[5]
Insofar as relevant here, that statute provides:
*240 “If it appears to the satisfaction of the court that diligent and exhaustive efforts have been made from all available sources to ascertain the existence of distributees, or members of a class of devisees, legatees or beneficiaries, that at least three years have elapsed since the death of the decedent, or since the occurrence of the specified event upon which such class is finally determined, as the case may be, that the parties before the court know of no distributees of the decedent, or of such legatees, devisees or beneficiaries, other than those stated in the record, and that no claim to a share in the estate or trust has been made by any person whose relationship or existence has not been established in the record, the court may make a determination that no distributee of the decedent or class of distributees exists, or that no such devisee, legatee or beneficiary, or members of a class of legatees, devisees or beneficiaries exists, other than those whose status is established in the record before the court” (emphasis added).
I find that Geisler is not entitled to invoke the statute because the “diligent and exhaustive search” required to be made “from all available sources” has not actually been made (see Matter of Walsh, NYLJ, Sept. 19, 2008 at 37, col 6; Matter of Mason, NYLJ, Aug. 6, 2008 at 36, col 5; Matter of Schrake, 129 Misc 2d 671 [1985]). But, even if the statute were applicable here, it would avail Geisler nothing because the fundamental difficulty with her case is that she has not established from whom Nora’s maternal and paternal lines derive. That is the fatal flaw in this case.
It may be that Geisler can find proof to resolve the adoption question, and, thereby, establish the proper maternal and paternal lines.
Under the circumstances, I believe Geisler should at least be given the opportunity, if she wishes to do so, to present further proof in an effort to establish her relationship to Nora, and to close the properly-established maternal and paternal classes of distributees (see Matter of Perry, 78 AD3d 1590 [2010], affg on op of this court 29 Misc 3d 1221 [A], 2009 NY Slip Op 52781[U] [2009]). If Geisler elects to proceed further, she must make a motion to reopen the proof, seeking to resolve the ambiguities and gaps in what has been presented to date. However, if no such motion is made on or before September 13, 2013, the net *241 estate (after payment of commissions, attorney’s fee and guardian ad litem’s fee) must be paid over to the New York State Comptroller for the benefit of decedent’s unknown heirs.
Finally, the guardian ad litem has submitted a fee application for services rendered to date. All counsel were copied on that application, and no objection has been received. Accordingly, I hereby approve the fee, as requested, in the amount of $5,000, which I find fair and reasonable under all the circumstances of this case.

. Pursuant to a stipulation by the parties, entered into on December 19, 2008, William Naples, and his wife Annette Naples, the contingent residuary beneficiary, have renounced their interests as beneficiaries of this estate.

. That final document was an email letter to Geisler’s attorney from the Erie County Clerk’s Office (see infra at 238) arid from the Department of Vital Statistics.

. Naples testified that he later discovered that Sarah’s last name was not Darney, but Garner.

. The Department of Vital Statistics had no record of an adoption either.

. Geisler also argues that there was no objection to the documentary evidence or to the testimony, and that is true. However, where, as here, the documents and the testimony fail to prove what is required, they become legally meaningless.