Matter of Stomporowski (2025 NY Slip Op 50398(U))

[*1]

Matter of Stomporowski

2025 NY Slip Op 50398(U)

Decided on March 25, 2025

Surrogate's Court, Erie County

Mosey, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 25, 2025
Surrogate's Court, Erie County

In the Matter of Gary S. Stomporowski, 
 a/k/a GARY STANISLAUS STOMPOROWSKI, Deceased.

File No. 2022-1206/B

PAUL J. SMALDONE, ESQ.
Appearing for Diane Sikorski and Tina Niespodzinski
KEITH ROSSO, ESQ.
Guardian ad Litem for Unknown Heirs
HON. LETITIA JAMES, NYS Attorney General
Appearing for Unknown Heirs
Melissa Thore, Esq., of Counsel

Acea M. Mosey, S.

Gary S. Stomporowski [hereafter, decedent], a bus driver in the Town of Cheektowaga, died intestate at the age of 68 on September 26, 2021, leaving an estate valued at approximately $250,000.
Decedent's nearest living relatives were a maternal aunt [FN1]
and numerous cousins on both the maternal side and paternal side. Letters of Administration were issued to two of those cousins, Diane Sikorski [hereafter Diane], a paternal first cousin, and Tina Niespodzinski [hereafter Tina], a maternal first cousin. A petition to judicially settle the account of the co-administrators has been filed, a Guardian ad Litem [hereafter, the GAL] was appointed for possible unknown heirs, and a kinship hearing was scheduled. On consent of the parties, that hearing was held before a Court Attorney on a hear and report basis. The parties also waived a written referee report and consented that I could decide this matter based upon the hearing transcript and the documentary evidence (see SCPA 506[6][c]). The GAL has filed his report and recommendation, and this matter has been finally submitted.
I now find and decide as follows.

 (I)
"In all cases involving pedigree and the distribution of intestate property, it is first [*2]necessary to establish the identity of the common ancestor and from that point to construct the true family tree, to which all claimants must attach themselves to be successful" (Matter of Whalen, 146 Misc 176, 180 [1932], emphasis added; see also, Matter of Lelito, 20 Misc 3d 1120[A] [2008]). "When persons of the nearest degree of relationship establish [their] standing, those more remote are excluded" (Matter of Henesey, 3 Misc 2d 660, 662 [1956], quoting Matter of Wendel, 143 Misc 480 [1932], aff'd 3 AD2d 832 [1957]). A person "who seeks to establish an interest in a decedent's estate as a collateral relative must show that all lines of descent which would precede his or her claim as a distributee are exhausted" (Matter of Dinzey, NYLJ, June 9, 2003, at 33, col 4).
Unlike an informal search seeking information about a person's personal family history, the nature of the proof required in kinship proceedings is more stringent and has become well-established over the years (2 Harris 5th, NY Estates: Probate Administration & Litigation, § 21:19). "Evidence of pedigree takes the form of oral testimony, preferably by a disinterested person such as a professional genealogist, with documentary evidence required to corroborate it" (Matter of Kuberka, 22 Misc 3d 1104[A] [2008], citing 6 Warren's Heaton, Surrogate's Court Practice § 74:17(2)(b)(iii) at 74-57 [7th ed.] and Matter of Logue, NYLJ, June 19, 1998, at 30, col 3; see also, Matter of Gavin, 41 Misc 3d 232 [2013] and Matter of Antolin, 2020 NY Slip Op 34482[U], 2020 NY Misc LEXIS 15359, dec. Mar. 6, 2020). "[C]laimants who fail to offer evidence to exclude the possible existence of persons who would have an equal right to share in the estate fail to establish their rights as distributees (Matter of Hasser, 187 Misc 368 [1946])" (Matter of Darenzio, NYLJ, July 23, 2010, at 36, col 5).
A claimant has the burden of proving kinship (see, e.g., Matter of Flavin, 15 Misc 3d 1104[A] [2007]), and he or she must establish that he or she is the decedent's closest blood relative, as defined by EPTL 4-1.1 (see Matter of Dinzey, supra). This burden is met by a preponderance of the credible evidence (see Matter of Paul, 2017 NY Misc LEXIS 674, 2018 NY Slip Op 30344[U] [dec. Feb. 17, 2017]; see also, Matter of Whelan, 93 AD2d 891 [1983]). For kinship to be established to the Court's satisfaction, a claimant must make an evidentiary showing (1) how he or she is related to the decedent, and (2) that no other persons of the same or a nearer degree of relationship survived the decedent. Upon proof that no heirs other than those before the Court exist, the class of heirs may be "closed" (see, e.g., Matter of Alao, NYLJ, March 19, 2002, at 20, col 5).
In cases where there are claimants at the cousin class, this Court [Howe, J.] pointed out in Matter of Perry, 29 Misc 3d 1221(A) [2009], aff'd 72 AD3d 1590 [2010], that:
"In kinship proceedings where claimants claim to be the decedent's cousins, proof is required to establish that they are issue of grandparents (EPTL 4-1.1[a][6]). As I stated in Matter of Pacosz, 'In order for the Court to determine the status on this level, a common ancestor must be identified (Matter of Tim, 6 Misc 2d 47 [1956], aff'd 8 AD2d 720 [1959]). Until such identification is made, no family tree can be traced, and no judicial determination of pedigree can be made (id., at 51). It is only from that point on that a family tree can be constructed so as to allow parties an opportunity to successfully attach themselves (Matter of Dinzey, supra)' (Matter of Pacosz, 22 Misc 3d 1105[A]).
Thus, the identity of the grandparents, and the identity and number of their children are critical components in a kinship determination, not only as a starting point to allow cousin claimants the opportunity to establish their status, but to close the classes of grandparents, aunts, uncles, and cousins, as well" (emphasis added).
Finally, I note that, pursuant to SCPA 2225(b), if three years have elapsed since a decedent's death, a Court may determine that there are no persons other than those before it entitled to share in the decedent's estate provided the parties have conducted a diligent and exhaustive search "from all available sources to ascertain the existence of distributees." In this case, because decedent died more than three years ago, this presumption would be available if the other elements have been met. Whether this presumption applies is addressed in discussing the appropriate classes.

 (II)
At the kinship hearing, three witnesses testified: Tina, Diane, and Timothy Deck [hereafter Deck], a genealogist. I find all witnesses' testimony to be credible and persuasive.[FN2]
Five exhibits were entered into evidence, including a binder of documents [hereafter, the Genealogist binder] compiled by Deck.

 Spouse
Decedent was married once, to Nancy McMahon [hereafter, Nancy]. They married on June 7, 1975, and together owned and operated the Blarney Castle bar in South Buffalo. Their marriage ended in divorce in 1989, as evidenced by the Judgment of Divorce which was entered into evidence at the hearing.
Diane testified that decedent never remarried:
"Q: Did Gary ever remarry?
A: Gary did not.
Q: He never remarried?
A: No."[FN3]
I find that that decedent was not married at the time of his death.

Children
Decedent had no children of his marriage to Nancy, as Tina made clear in her testimony:
"Q: Do you know whether during their marriage, they ever had any natural children?
A: No they did not.
Q: You know that for a fact?
A: I know that for a fact because they did go for fertility — you know, for fertility issues and they could not have children.
Q: Did they ever adopt any children?
A: No, they did not.
Q: You would have known if they had any children or adopted children?
A: Yes, we would know.
Q: That would've been discussed as part of the family —
A: Oh definitely, yeah."
Diane, too, confirmed this fact:
"Q: Okay, and do you know from your personal knowledge and relationship with Gary whether he and Nancy had any children?
A: No, they had no children.
Q: No natural children? How about adopted children?
A: None.
Q: And you know this for sure?
A: Yes.
Q: If they were — if they had children or adopted children, would you have known about it?
A: Well, sure."
As noted, SCPA 2225(b) permits me, if more than three years has elapsed since a decedent's death, and a diligent and exhaustive search has been conducted, to conclude that no other distributees of a particular class exist. I find under the circumstances that a diligent and exhaustive search has been conducted in this matter with respect to whether decedent had any children, including marital, nonmarital, adopted or adopted-out, children, and that the presumption applies.
I am, therefore, able to conclude, based on the totality of the evidence before me, that decedent had no children and the class of children can be closed.

 Parents
Decedent was born to Stanley Stomporowski [hereafter, Stanley] and Adeline Zulawski [hereafter, Adeline].
Stanley was born on XX XX, 1926, Adeline was born on XX XX, 1925, and they married on October 30, 1948, in Buffalo, New York. Adeline predeceased the decedent, passing away on October 30, 2013, according to the death certificate included in the Genealogist binder. Though no death certificate was provided for Stanley, the Genealogist binder does have a picture of a gravesite for Stanley which references his passing on December 29, 1990, with an obituary for him from the Buffalo News. Furthermore, Adeline's death certificate states she was widowed, and her obituary states that she was the "beloved wife of the late Stan Stomporowski."
Under the totality of the circumstances, I find that both of decedent's parents predeceased him, and the class of parents can be closed.[FN4]

 Siblings, Nieces, and Nephews
Stanley and Adeline had two children: decedent and Timothy Stomporowski [hereafter, Timothy]. Timothy was born on XX XX, 1956. His death certificate, which was included in the [*3]Genealogist binder, listed his parents as Stanley and Adeline. Timothy died on November 27, 2018.
Both Tina and Diane testified that Stanley and Adeline had only two children, as did Genealogist Deck:
"Q: And how many children did Stanley and Adeline have?
A: They had two sons, Timothy and Gary."
Based on the same statutory presumption discussed supra, I am satisfied that decedent had one sibling, Timothy, who predeceased him, and that this class can be closed.
Tina testified that decedent's brother — "my cousin Timmy" — never married. She also testified that Timmy never had any children. Diane echoed this testimony, stating that Timothy was "a simple man" and that he never had any children. Based upon the testimony of Tina and Diane, I find that the class of nieces and nephews is closed.[FN5]

(III)
DECEDENT'S PATERNAL FAMILY
 Paternal Grandparents
Decedent's father was born to Isadore Stomporowski [hereafter, Isadore] and Michaeline Lewczyk [hereafter, Michaeline], as evidenced by the copy of the Certificate of Birth included in the Genealogist binder, as well as census records which recorded the relationship between decedent's father and paternal grandparents. Also included in the Genealogist binder were copies of death certificates for both paternal grandparents: Isadore died on September 23, 1928, and Michaeline on March 4, 1959.

 Paternal Aunts/Uncles
Decedent's father Stanley was one of five children born to decedent's paternal grandparents: Stephania Stomporowski Maslanka [hereafter, Aunt Stephania], Charlotte a/k/a Lottie Stomporowski [hereafter, Aunt Lottie], Rose Stomporowski [hereafter, Aunt Rose], Frances Stomporowski Tobolski [hereafter, Aunt Frances], and Stanley, decedent's father.
Aunt Stephania was, according to her birth certificate, born on XX XX, 1918. Her obituary and a census record show that she married Bronislaus "Brownie" Maslanka [hereafter, Bronislaus] and she died on December 17, 2005.[FN6]

Aunt Lottie was apparently born under the name Wladyslawa on XX XX, 1919. She never married, and she died on March 4, 1989.[FN7]

Aunt Rose, according to her death certificate, was born on XX XX, 1922. No birth certificate was found for her, despite Deck making the request to the City of Buffalo authorities. The informant on Rose's death certificate was her sister, Lottie Stomporowski, and reveals that Rose never married and died on January 16, 1988.
Aunt Frances was born as Franciszka [FN8]
on XX XX, 1924, according to the birth certificate included in the Genealogist binder. She married Victor Tobolski [hereafter, Victor] on September 1, 1951. Her death certificate lists her date of death as June 8, 2015.
Based upon the totality of the evidence before me, and based upon the thorough research conducted by Genealogist Deck, I find that decedent had four paternal aunts who all predeceased and the class of paternal aunts and uncles can be closed.

 Paternal First Cousins
The evidence before me, including the testimony at the hearing and the research of Genealogist Deck, indicates that decedent was survived by paternal first cousins.
Aunt Stephania
According to the certificate of birth registration, cousin Sandra Antoinette Maslanka [hereafter, Sandra] was born to Aunt Stephania and Bronislaus on XX XX, 1944. The obituaries for Aunt Stephania and Bronislaus identify Sandra as being married to Robert Krakowiak.
Cousin Diane Marie Maslanka [hereafter, Diane] was born to Aunt Stephania and Bronislaus on XX XX, 1947. The obituaries for Aunt Stephania and Bronislaus identify Diane as being married to Michael Sikorski.
Both obituaries for Aunt Stephania and Bronislaus reference only the two children, and Genealogist Deck testified at the hearing that Sandra and Diane were the only children of Aunt Stephania and Bronislaus:
"Q: And how many children did Stephania have?
A: She had two daughters, Sandra and Diane.
Q: And are both of those individuals living?
A: Yes they are.
Q: And how do you know that Stephania only had two children?
A: Again, I used the census tracks. 1950 census showed that she was — she had the two daughters, and then I used the deceased records for death for both and her husband. Both of the obituaries listed those two daughters."
I conclude, based upon the evidence before me, that Sandra and Diane, both claimants [*4]herein, were the only children of Aunt Stephania and Bronislaus.[FN9]

Aunt Frances
Aunt Frances and Victor had three children. Dennis Tobolski [hereafter, Dennis], who was born on XX XX, 1952, Kenneth Tobolski [hereafter, Kenneth], who was born on XX XX, 1958, and James Tobolski [hereafter, James], who was born on XX XX, 1963. All three birth certificates list Aunt Frances and Victor as their parents. The three boys are identified on Aunt Frances' obituary as her only three children. As Genealogist Deck testified:
"Q: Did Frances ever marry?
A: Yes, she married Victor Tobolski on September 1, 1951. They had three sons, Dennis, Kenneth, and James.
Q: And are Dennis, Kenneth and James all living?
A: Yes, they are."
Diane, too, testified about her cousins:
"Q: Okay. Your Aunt Frances, she did marry?
A: Yes.
Q: And what was her husband's name?
A: Victor.
Q: And did they have any children?
A: They had three.
Q: And who are their children?
A: Dennis, Kenneth and James."
I find, based on the evidence before me, that Dennis, Kenneth, and James were the only children of Aunt Frances and Victor, that all three survived decedent and are claimants herein.
Decedent's other two paternal aunts, Aunt Lottie and Aunt Rose, were unmarried and had no children.[FN10]
As Genealogist Deck testified:
"Q: Next in the birth order to Isadore and Michaeline was Charlotte.
A: Right.
Q: How do you know that Charlotte never married?
A: Her census track shows her single.
Q: Okay.
A: And her obituary shows no spouse and shows no children.
Q: Okay. And you indicated for Rose you weren't ever able to find her birth certificate but you did find her on census records?
A: Correct.
Q: And it's your testimony that Rose never married?
A: Correct.
Q: And how do you know that Rose never married and had no children?
A: Based on the evidence that when I did research on Rose in the newspapers, I would find newspaper articles on Rose, Rose won the jingle, I was telling them, in the Buffalo News back in the '70s. They had jingles, she won a hundred dollars, but every indication that I would find on her, along with her death certificate, which her death certificate lists the next of kin as her sister Lottie, and it does show on there that she was single. So the death certificate does not show divorced or ever married. She was a single lady with her sister Lottie being the one as next of kin."
Based upon the totality of the evidence before me and based upon the thorough research conducted by Genealogist Deck, I find that decedent was survived by five paternal first cousins: Sandra, Diane, Dennis, Kenneth, and James, and that the class of paternal first cousins can be closed.

(IV)
DECEDENT'S MATERNAL FAMILY
 Maternal Grandparents

Decedent's mother Adeline was born to Frank Zulawski [hereafter, Frank] and Anna Gozdziak Zulawski [hereafter, Anna], as evidenced by the copy of the Certificate of Birth included in the Genealogist binder. This is further bolstered by census records which confirm the relationship between decedent's mother and his maternal grandparents.
Frank died on May 28, 1964, according to the death certificate included in the Genealogist binder. No death certificate was included for Anna, but the binder includes a picture of the headstone for both Frank and Anna which states the year of death for Anna as 1968. This is consistent with the obituary from the Buffalo News which states that Anna died on December 29, 1968. Despite the absence of a death certificate, I am satisfied that Anna predeceased decedent.

Maternal Aunts/Uncles
Decedent's mother Adeline was one of twelve children born to Frank and Anna Zulawski: Cecelia Zulawski Bieber [hereafter, Aunt Cecilia], Margaret Zulawski Pigut [hereafter, Aunt Margaret], Raymond Zulaski [hereafter, Uncle Raymond], David Zulaski [hereafter, Uncle David], Irene Zulawski Walkowiak [hereafter, Aunt Irene], Adeline [decedent's mother], Agnes Zulawski Kozel [hereafter, Aunt Agnes], Jeanette Zulawski Bak [hereafter, Aunt Jeanette], Diana Zulawski Moskal [hereafter, Aunt Diana], Frank Zulawski [hereafter, Uncle Frank], and Robert Zulawski [hereafter, Uncle Robert], plus a stillborn unnamed baby.[FN11]

Aunt Cecilia was born in 1915. No birth certificate or death certificate was included in the Genealogist binder for her, but a record from the 1915 New York State Census shows that she was born some time that year. Records from the 1920 and 1930 Federal Censuses corroborate this approximate date. Aunt Cecelia married Harold Bieber [hereafter, Harold] on October 1, 1935. The only proof of death in evidence is a photograph of a headstone showing a year of death of 1999 and an obituary which reflects her date of death of September 23, 1999.[FN12]

Aunt Margaret was, according to the Family Tree, born on XX XX, 1917. No birth or death certificate was offered into evidence for Aunt Margaret. Entries from the 1920 and 1930 Federal Censuses support the approximate year of birth of 1917. She married Frederick Pigut [hereafter, Frederick] on November 14, 1938, then later married Alfred Michaelski [hereafter, Alfred] on October 14, 1950. In support of proof of death, all that was provided is a photograph of her headstone showing a date of death of 2004. Included in the Genealogist binder is an entry from a Social Security Claims index showing her date of death of May 26, 2004. I am able to presume that Aunt Margaret predeceased decedent because she would have been in excess of 100 years old at the time of decedent's death (see, e.g., Matter of Zepf, 2016 NY Slip Op 32034 [U], dec. Aug 30, 2016).
Uncle Raymond was born on XX XX, 1920, as evidenced by his birth certificate included in the Genealogist binder. He never married, and his obituary lists a date of death of June 7, 1971. No death certificate was included in the Genealogist binder, but a photograph of his headstone (which he shared with Uncle David, his brother) was included, as well as a copy of an application for a military headstone.[FN13]

Uncle David was born on XX XX, 1921, according to a copy of his World War II draft registration card which is included in the Genealogist binder. According to his obituary, he was not married and had no children. He died on May 13, 1996 and was buried next to Uncle Richard, his brother.[FN14]

Aunt Irene was born on XX XX, 1923, according to her birth certificate, a copy of which was included in the Genealogist binder. On August 11, 1945, she married John Walkowiak [hereafter, John]. According to her death certificate, she died on April 8, 2008.
Aunt Agnes was born on XX XX, 1930, as shown by her certificate of birth, a copy of which was included in the Genealogist binder. On May 17, 1952 she married Henry Kozel. Aunt Agnes survived decedent and died on June 30, 2024, during these estate proceedings, making her [*5]estate a claimant herein (see discussion, infra, at pp. 37-38).[FN15]

Aunt Jeanette was born on XX XX, 1931. On January 3, 1953 she married Robert J. Bak. She died on October 19, 2006 and was buried in the Williamsville, New York, Cemetery. A photograph of her headstone was included in the Genealogist binder, as was a copy of her obituary from the Buffalo News.[FN16]

Aunt Diana was born on XX XX, 1932, according to her birth certificate. On August 13, 1951 she married Joseph Moskal [hereafter, Joseph]. Though no death certificate was provided, included in the Genealogist binder is a copy of the death register from the Buffalo, New York, Forest Lawn Cemetery, which indicates her date of death as October 15, 1996. Also included in the binder was a copy of her obituary from the Buffalo News.[FN17]

Uncle Frank was born on XX XX, 1934, according to the Ancestry.com entry provided by the Genealogist and a photocopy of his military ID. On February 2, 1962, he married Judith Herko [hereafter, Judith], and he died on September 3, 2015 (as shown by his death certificate).
Uncle Robert, the youngest child, was born XX XX, 1934. On November 27, 1954, he married Mary Anne Smith [hereafter, Mary Anne]. He died on July 19, 2002, according to the death certificate provided as part of the Genealogist binder.[FN18]

Based upon the totality of the evidence before me and based upon the thorough research conducted by Genealogist Deck, I find that decedent was survived by one maternal aunt, Agnes. All of the other maternal aunts and uncles predeceased decedent, and the class of maternal aunts and uncles can be closed.

 Maternal First Cousins
The evidence before me, based on the testimony and the report of the Genealogist, establishes that decedent was survived by maternal first cousins.
Aunt Cecilia
Cecilia and Harold had two children: Harold R. Bieber [hereafter, Harold Jr.] and Ronald John Bieber [hereafter, Ronald]. Harold Jr. was born XX XX, 1935 and Ronald was born on XX XX, 1937. Harold Jr. and Ronald's birth certificates each list Aunt Cecilia and Harold as their parents.
Harold Jr. and Ronald were the only two children of Cecilia and Harold, as Tina testified at the hearing:
"Q: Okay, and was Cecilia married?
A: Yes, she was.
Q: And who was Cecilia's husband?
A: She was married to my uncle Beech Harold (sic).
Q: And did he have a nickname, you said Beech?
A: Beech, his name is Beech, yeah.
Q: Okay. So Harold and Beech are the same individual?
A: Yes they are. I'm sorry.
Q: Okay. That's okay, and were they always only married to each other?
A: Yes they were.
Q: Okay, and did Cecilia and Beech have any children?
A: They had two sons.
Q: And who were the —
A: They had Harold, Jr., and Ronald.
Q: Okay, and is Harold, Jr. still living?
A: Harold, Jr. is living, Ronald is not.
Q: Okay, and did Ronald die before —
A: Yes.
Q:  or after Gary?
A: He died before Gary."
Aunt Cecilia's obituary, included in the Genealogist's binder, lists only two children for her: Harold Jr. and the late Ronald.[FN19]
Based on the evidence before me, I conclude that Aunt Cecilia had only two children, Harold Jr., a claimant herein, and Ronald who predeceased decedent.
Aunt Margaret
Aunt Margaret and Frederick had one child, David Frederick Pigut [hereafter, David]. David was born on XX XX, 1940. His birth certificate lists Aunt Margaret and Frederick as his parents. David passed away on May 22, 1991, as evidenced by his obituary and the photograph of the headstone he shares with his mother.
At the hearing, Tina testified regarding this cousin:
"Q: Okay, and did Margaret and her husband, Mr. Pigut, have any children?
A: One child, one son.
Q: And who was that?
A: You're going to hate me. We used to just call him Huntsey.
Q: Huntsey?
. . .
A: Yeah, it was a nickname, yeah.
Q: Okay. So Huntsey was Margaret's only child?
A: Yes.
Q: Did Margaret and her husband ever adopt any children?
A: No."
Based on the evidence before me, I conclude that David was Aunt Margaret's only child, and that David predeceased decedent.
Aunt Irene
Aunt Irene and John had four children: John Walkowiak, Jr. [hereafter, John Jr.], James Walkowiak [hereafter, James], Priscilla Walkowiak [hereafter, Priscilla], and Patricia Walkowiak [hereafter, Patricia]. John Jr. (also known as Jack or Jackie), who was born XX XX, 1946, James, who was born on XX XX, 1947, Priscilla, who was born on XX XX, 1949, and Patricia, who was born on XX XX, 1952. Of those four, only John Jr. and James survived decedent, though James died during these estate proceedings.[FN20]

At the hearing, Tina testified about these four cousins:
"Q: And how many children did Aunt Irene have?
A: Aunt Irene was married to John, and her and Johnny had four children.
Q: Okay, and can you tell me who Aunt Irene's children were?
A: Yes. There was Jackie, Jim — Jimmy, Priscilla and Patricia.
Q: Okay. Now, is Jack the nickname for John?
A: Yes.
Q: Okay, and Jackie is also a nickname for Jack, not another female named Jackie.
A: Yeah, there's only the four, yes.
Q: Okay, so there's four children. And are any of Aunt Irene's children still living?
A: Yes. Jackie the oldest boy, he is still living. While this was going on, Jimmy, the other son, died.
Q: Okay, so Jackie is still alive —
A: Yes.
Q:  and Jimmy post deceased —
A: During this, yeah.
Q:  Gary? Okay. And did Priscilla die before or after Gary?
A: Before Gary.
Q: And did Patricia die before or after Gary?
A: Before."
Included in the Genealogist binder are copies of a death certificate for James, and obituaries for both Priscilla and Patricia.
Based on the evidence before me, I conclude that John Jr., James, Priscilla, and Patricia are the only children of Aunt Irene, that Priscilla and Patricia predeceased the decedent, and that [*6]John Jr. and James' estate are claimants herein.
Aunt Agnes
Aunt Agnes survived the decedent and postdeceased on June 30, 2024. Her estate is a claimant herein (see, infra, at pp. 37-38). 
Aunt Jeanette
Aunt Jeanette and Robert had six children: Robert Bak, Jr. [hereafter, Robert Jr.], who was born XX XX, 1953; Paul Bak [hereafter, Paul], who was born XX XX, 1954; Richard Bak [hereafter, Richard], who was born XX XX, 1957; Douglas Bak [hereafter, Douglas], who was born XX XX, 1959; Kathryn Bak Golding [hereafter, Kathryn], who was born XX XX, 1961; and Bonny Bak Sklener [hereafter, Bonny], who was born XX XX, 1964.
Regarding Aunt Jeanette, Tina testified at the hearing
"Q: Okay. And then the next on my chart is Jeanette.
A: Correct.
Q: Do you know if Jeanette ever married?
A: She did. She was married to Robert.
Q: Okay.
A: And they had six children.
Q: And was Jeanette only ever married to Robert?
A: Yes.
Q: And you said they had six children. Can you tell me who Jeanette's six children were?
A: Yes. There was Robert, there was Richard, Douglas, Paul who died very young in a motorcycle accident, and then there was Kathy and Bonny.
Q: Okay, and of those six children, Paul is the only one that's passed away?
A: Yes.
Q: And you said he died very young?
A: Yes he did.
Q: Okay, and he died before Gary?
A: Oh yes."
Included in the Genealogist binder is a copy of a newspaper report regarding the motorcycle accident, and an obituary for Paul.[FN21]

Based on the evidence before me, I conclude that Robert Jr., Paul, Richard, Douglas, Kathryn, and Bonny were the only children of Aunt Jeanette, that Paul pre-deceased decedent, and that Robert Jr., Richard, Douglas, Kathryn, and Bonny are claimants herein.
Aunt Diana
Diana and Joseph had six children: Ann Marie Moskal Napierala [hereafter, Ann Marie], who was born XX XX, 1951; Randolph Moskal [hereafter, Randolph], who was born XX XX, [*7]1953; Leonard Moskal [hereafter, Leonard], born XX XX, 1957; Charlene Moskal Graue [hereafter, Charlene], who was born XX XX, 1960; Joyce Moskal Zuchoski [hereafter, Joyce], who was born XX XX, 1965; and Sandra Moskal Friedrich [hereafter, Sandra], who was born XX XX, 1968.
As Tina testified at the hearing:
"Q: Okay. According to my chart, the next — which is the one I missed —
A: Diana?
Q:  when I was listing was Diana.
A: Mmm-hmm.
Q: And did your Aunt Diana ever marry?
A: Yes, she was married to Joe.
Q: And did Aunt Diana and Uncle Joe have any children?
A: Yes they did. They had Annie, Randy, Leonard — Annie, Randy and Leonard, now wait, I got to think — Randy and Leonard — I've got to look at my chart. I'm sorry, I'm nervous.
Q: That's okay.
A: Okay.
Q: You can take your time.
A: Randy, Lenny, Annie, Joyce, Sandra and Charlene. I forgot the girls that lived the closest.
Q: Okay. So Aunt Diana had six children.
A: Yes.
. . .
Q: Okay, and are all of Aunt Diana's children still living?
A: They are.
Q: And if Aunt Diana had any other children, do you think you would've known?
A: We would've known.
Q: And did Aunt Diana and her husband ever adopt any children?
A: No."
Based on the evidence before me, I find that Aunt Diana had six children  Ann Marie, Randolph, Leonard, Charlene, Joyce, and Sandra  and that all six survived decedent and are claimants herein.[FN22]

Uncle Frank
Uncle Frank and Judith had one child, Jeremie Zulawski [hereafter, Jeremie], who was born XX XX, 1974. His birth certificate, which is included in the Genealogist binder, lists Uncle Frank and Judith as his parents. Tina's testimony established that Jeremie is still living:
"Q: The next on my chart is your Uncle Frank. Did Uncle Frank ever get married?
A: He was married to Judy — Judith, and they had one son, Jeremie.
Q: Okay, and was Frank and Judith only ever married to each other?
A: Yes.
Q: And if Frank and Aunt Judith had adopted any children, do you think you would've known?
A: Yes, we would've known.
. . .
Q: And is their son Jeremie still living?
A: Yes he is."
Based on the evidence before me, I conclude that Jeremie is the only child of Uncle Frank, that he survived decedent, and he is a claimant herein.
Uncle Robert
Robert and Mary Anne had three children: Michelle Zulawski Zwack [hereafter, Michelle], Carol Zulawski [hereafter, Carol], and Deborah Zulawski Myers [hereafter, Deborah]. Michelle was born on XX XX, 1955, Carol was born on XX XX, 1957, and Deborah was born on XX XX, 1959. Both Michelle and Carol predeceased decedent, as Tina testified at the hearing:
"Q: Okay, and did Uncle Robert have any children?
A: He did. He had my two cousins, Michelle and Deborah.
. . .
Q And is Michelle still alive?
A: No, Michelle passed away before Gary.
Q: Okay. Now my chart also indicates that there was a Carol. Can you tell me a little bit about Carol?
A: There was a Carol. The baby, yes, the baby died very young, like I'm going to say just like a couple years old.
Q: Okay. So you were aware of Carol's existence?
A: Oh yes, mmm-hmm.
Q: And she passed in infancy?
A: Yes she did.
Q: And so she passed before Gary?
A: Gary, correct.
Q: And then your cousin Deborah is still living?
A: Correct."
Based on the evidence before me, I find that Uncle Robert had three children, Michelle, Carol, and Deborah, and that only Deborah survived decedent and is a claimant herein.[FN23]

Two uncles — Raymond and David — are reported to have predeceased decedent leaving no children.
With respect to Uncle Raymond, Tina testified at the hearing:
"Q: Okay, and the next on my chart would be your Uncle Raymond.
A: Yes. He was single, never married, no children.
Q: Okay, and how do you know that Uncle Raymond was single and never married?
A: Because he was always at — he bought property with my dad. My dad and Raymond were very close, the two of them, and they were always at our house, you know. There was never a girlfriend or anybody around, you know. We never went to a wedding or anything like that, so.
Q: Okay, and did Uncle Raymond have any children?
A: No.
Q: And did Uncle Raymond ever adopt any children?
A: No."
As for Uncle David, Tina testified:
"Q: Okay. Next on my chart would've been your Uncle David.
A: Okay.
Q: What can you tell me about your Uncle David?
A: Single also, no children, never adopted, very close to our family, to my, you know, my little family.
Q: Your portion of the family?
A: Yes."
Genealogist Deck also testified regarding the two brothers:
"Q: Okay. And it's — the records indicate that Raymond was never married?
A: Correct.
Q: And he had no children?
A: Correct.
Q: Okay. David also was never married and no children, correct?
A: That's correct also."
Obituaries for both Uncle Raymond and Uncle David are included in the Genealogist binder, and neither reference any spouse or children, surviving or otherwise. I find, based on the totality of the evidence before me, that neither Uncle Raymond nor Uncle David had any children, and that both predeceased decedent.[FN24]

Based upon the totality of the evidence before me and based upon the thorough research conducted by Genealogist Deck, I find that decedent was survived by sixteen maternal first [*8]cousins [FN25]
: Harold, John Jr., James (who postdeceased), Robert Jr., Richard, Douglas, Kathryn, Bonny, Ann Marie, Randolph, Leonard, Charlene, Joyce, Sandra, Jeremie, and Deborah, and that the class of maternal first cousins can be closed.

 (V)
After the conclusion of the kinship hearing, the GAL submitted his Report and Recommendation. In his Report, the GAL is satisfied that the maternal and paternal claimants have established their status and that they are the only distributees of decedent. The GAL recommends that decedent's net estate be distributed in accordance with EPTL 4-1.1.
I find and conclude that, based on the totality of the credible evidentiary material and testimony before me, and in recognition that more than three years have elapsed since decedent's death, that diligent and exhaustive efforts have been made from all available sources to ascertain the existence of other possible distributees on the maternal and paternal sides of decedent's family tree, and that all of decedent's distributees have been identified (SCPA 2225[b]). Furthermore, I find the proof establishes, clearly and convincingly, that the classes of decedent's spouse, issue, parents, siblings or their issue, paternal and maternal grandparents, aunts, uncles, and first cousins have all been "closed."
With respect to how decedent's estate is to be distributed, I point out first that EPTL 4-1.1 governs distribution of estates where, as here, the decedent left no Will. In that regard EPTL 4-1.1(a)(6) provides that "[i]f a decedent is survived by:
"One or more grandparents or the issue of grandparents (as hereinafter defined), and no spouse, issue, parent or issue of parents, one-half to the surviving grandparent or grandparents of one parental side, or if neither of them survives the decedent, to their issue, by representation, and the other one-half to the surviving grandparent or grandparents of the other parental side, or if neither of them survives the decedent, to their issue, by representation; provided that if the decedent was not survived by a grandparent or grandparents on one side or by the issue of such grandparents, the whole to the surviving grandparent or grandparents on the other side, or if neither of them survives the decedent, to their issue, by representation, in the same manner as the one-half. For the purposes of this subparagraph, issue of grandparents shall not include issue more remote than grandchildren of such grandparents."
Next, I note that, at this level of distribution, the statute divides decedent's estate into two parts: one-half [50%] to the paternal side, one-half [50%] to the maternal side (see, e.g., Matter of Pearsall, 191 Misc 2d 66, 67 [2002] and Matter of Alder, 175 Misc 2d 357 [1997]).

 (i)
I conclude that decedent was survived by five (5) paternal first cousins, namely:
1. Sandra Krakowiak;
2. Diane Sikorski;
3. Dennis Tobolski;
4. Kenneth Tobolski; and
5. James Tobolski.
The five (5) paternal first cousins listed above are now entitled to equal fractional shares in one-half of decedent's net estate.

(ii)
With respect to the maternal side, I conclude that decedent was survived by one (1) maternal aunt, namely Agnes Kozel, who post-deceased, and sixteen (16) maternal first cousins, one of whom post-deceased decedent, namely:
1. Harold Bieber;
2. John Walkowiak, Jr.;
3. The Estate of James Walkowiak;
4. Robert J. Bak, Jr.;
5. Richard Bak;
6. Douglas Bak;
7. Kathryn Bak Golding;
8. Bonny M. Sklener;
9. Ann Marie Napierala;
10. Randolph Moskal;
11. Leonard Moskal;
12. Charlene Graue;
13. Joyce Zuchoski;
14. Sandra Friedrich;
15. Jeremie Zulawski; and
16. Deborah Myers.
In making my determinations with respect to the maternal side of decedent's family, I am mindful that, on March 15, 2022, six months after decedent's death, Aunt Agnes filed what was called a "renunciation of estate interest" and affidavit. In those documents, Aunt Agnes stated as follows:
"My renunciation shall accelerate and enhance the interests of my two daughters, namely: Tina Niespodzinski, residing at 1459 Greenwood Terrace, Marilla, New York 14102 and Renee Kowalczyk, residing at 3981 Park Avenue, Hamburg, New York 14075, and my two grandchildren, DANIELLE FLANIGAN, residing at 8241 Peaceful Canyon, Las Vegas, Nevada 89128 and CAROLYNN KOZEL, residing at 3003 Clinton Street, West Seneca, New York 14224, who are the issue of my predeceased son, NEAL KOZEL who died May 12, 2003. They are the first cousins once removed of the decedent GARY S. STOMPOROWSKI."
It is clear that the intent of Aunt Agnes in attempting to renounce any interest she might otherwise have in decedent's estate was to "accelerate and enhance" the interests of her daughters and granddaughters. 
A renunciation which seeks, and intends, to "direct the disposition of [an] intestate share" of an estate is invalid (Matter of Sun, 2011 NYLJ LEXIS 2843 [dec. March 31, 2011]). As in Sun, here Aunt Agnes, by attempting to direct and control the disposition of her interest in decedent's estate, was, in effect, "exercis[ing] control as beneficial owner" of that interest, something which precluded and invalidated that renunciation as a matter of law (see EPTL 2-1.11[g]).
Accordingly, I find and conclude that the filed renunciation of Aunt Agnes is not legally effective, and her share of decedent's estate, as discussed infra, passes to her estate.
Decedent had a total of 11 maternal aunts and uncles. Of these, four (4) — Aunt Margaret, Uncle Raymond, Uncle David, and the stillborn baby — predeceased decedent without issue surviving decedent. Six (6) maternal aunts and uncles  Aunt Diana, Aunt Cecelia, Aunt Irene, Aunt Jeanette, Uncle Frank and Uncle Robert — predeceased decedent leaving a total of sixteen (16) children surviving them. One aunt, Agnes, survived decedent.
Under all these circumstances, I direct that the 50% maternal share of decedent's estate be divided into seven (7) equal shares, and those seven (7) shares shall be distributed as follows:
A. The Estate of Agnes Kozel shall receive one (1) share; and,
B. The sixteen (16) maternal first cousins listed above shall each receive a 1/16th share of the aggregate remaining six (6) shares of the maternal 50% of this estate.
The GAL fee application for services rendered to date shall be filed with this Court and served on all counsel on or before April 18, 2025, and those served will have until April 25, 2025, to serve and file any responding papers after which I shall decide the fee request on the papers submitted.
In reference to the pending Judicial Settlement proceeding, counsel for the estate shall file a proposed Final Judicial Settlement Decree with the Court on or before May 2, 2025,
This decision shall constitute the Order and Decree of this Court, and no other or further order or decree shall be required.
DATED: March 25, 2025
BUFFALO, NEW YORK
HON. ACEA M. MOSEY
Surrogate Judge

Footnotes

Footnote 1:By instrument dated December 14, 2021, maternal aunt Agnes Kozel filed a renunciation of her interest in this estate pursuant to EPTL 2-1.11, which will be discussed in further detail infra, at pp. 37-38.

Footnote 2:Tina and Diane are first cousins, and thus are interested. Though I find their respective testimonies credible and persuasive, I have given their testimonies the appropriate weight under the circumstances.

Footnote 3:Although decedent's death certificate indicates that he was "never married", it is unclear who the informant on that document was, and I find that the error on it is essentially irrelevant to this proceeding. 

Footnote 4:Judicial notice is taken of Adeline's Administration proceeding filed in Erie County Surrogate Court Estate File No. 2017-4947. The proceeding was filed by decedent and establishes Adeline was survived by two sons, decedent and Timothy.

Footnote 5:Judicial notice is taken of Timothy's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 2018-5234. The proceeding was filed by decedent and establishes decedent was Timothy's sole distributee. The Voluntary proceeding was later converted to a full Administration proceeding by Diane and Tina as co-fiduciaries of decedent's estate.

Footnote 6:Judicial notice is taken of Aunt Stephania's Probate proceeding filed in Erie County Surrogate Court Estate File No. 2006-0839. 

Footnote 7:Judicial notice is taken of Aunt Lottie's Probate/Administration CTA proceeding filed in Erie County Surrogate Court Estate File No. 1989-2030 [Old Indexes]. The proceeding was filed by Dennis Tobolski. Lottie's Will left her entire estate to her sister Rosalia a/k/a Rose Stomporowski who was the nominated Executor. The proceeding establishes Rose predeceased Lottie and was not survived by issue. Also, the proceeding establishes Lottie's intestate distributees as her siblings Stanley (decedent's father), Aunt Stephania, and Aunt Frances.

Footnote 8:In the evidence binder, Frances' name is spelled in a variety of ways, including Francis.

Footnote 9:Judicial notice is taken of Aunt Stephania's Probate proceeding filed in Erie County Surrogate Court Estate File No. 2006-0839. The proceeding was filed by Diane and Sandra and establishes Aunt Stephania had two children, Sandra and Diane.

Footnote 10:Judicial notice is taken of Aunt Lottie's Probate/Letters of Administration CTA proceeding filed in Erie County Surrogate Court Estate File No. 1989-2030 [Old Indexes]. This proceeding establishes that both Aunt Lottie and Aunt Rose were not survived by issue.

Footnote 11:The Family Tree references only eleven children born to decedent's maternal grandparents. However, in testimony, it was revealed that the grandparents had in fact had a twelfth child who was stillborn who was not included in the Family Tree. Furthermore, based on Erie County Surrogate's Court records, some of Frank and Anna's children altered the spelling of their surname "Zulawski" to "Zulaski".

Footnote 12:Judicial notice is taken of Aunt Cecelia's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 1999-4521.

Footnote 13:Judicial notice is taken of Uncle Raymond's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 1971-3478 [Old Indexes]. Uncle Raymond's death certificate indicates his date of death was June 9, 1971.

Footnote 14:Judicial notice is taken of Uncle David's Administration proceeding filed in Erie County Surrogate Court Estate File No. 1996-3728.

Footnote 15:Judicial notice is taken of Aunt Agnes' Probate proceeding filed in Erie County Surrogate Court Estate File No. 2024-3208. 

Footnote 16:Judicial notice is taken of Aunt Jeanette's Probate proceeding filed in Erie County Surrogate Court Estate File No. 2006-4176.

Footnote 17:Judicial notice is taken of Aunt Diana's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 1998-2418.

Footnote 18:Judicial notice is taken of Uncle Robert's Administration proceeding filed in Erie County Surrogate Court Estate File No. 2002-3380.

Footnote 19:Judicial notice is taken of Aunt Cecelia's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 1999-4521. This proceeding establishes Aunt Cecelia had two children: Harold and a child who predeceased. Aunt Cecelia had a Last Will and Testament on file which gave specific bequests to two grandchildren and left the residuary of the estate to her son Harold. 

Footnote 20:Judicial notice is taken of James' Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 2024-65. James is a claimant herein and his date of death is 7/3/2022.

Footnote 21:Judicial notice is taken of Paul's Administration proceeding filed in Erie County Surrogate Court Estate File No. 1979-3740 [Old Indexes]. Judicial notice is also taken of Aunt Jeanette's Probate proceeding filed in Erie County Surrogate Court Estate File No. 2006-4176 which establishes Aunt Jeanette was survived by five children.

Footnote 22:Judicial notice is taken of Aunt Diana's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 1998-2418 which establishes she was survived by six children.

Footnote 23:Judicial notice is taken of Uncle Robert's Administration proceeding filed in Erie County Surrogate Court Estate File No. 2002-3380 which establishes Deborah was his only surviving child when he died on 7/19/2002.

Footnote 24:Judicial notice is taken of Uncle Raymond's Voluntary Administration proceeding filed in Erie County Surrogate Court Estate File No. 1971-3478 [Old Indexes]. Uncle Raymond's proceeding establishes he had no issue and he was survived by his siblings. Judicial notice is also taken of Uncle David's Administration proceeding filed in Erie County Surrogate Court Estate File No. 1996-3728. Uncle David's estate proceeding establishes he had no issue and he was survived by his siblings.

Footnote 25:In this regard, I do not take into account the children of Aunt Agnes whom I discuss infra, at pp. 37-38.